### A98A0994. JOHNSON v. COOPER.
(507 SE2d 559)

RUFFIN, Judge.

Leslie Johnson sued Phillip Cooper for injuries she allegedly sustained in an automobile collision. Before trial, Cooper stipulated to his negligence, leaving only the issues of proximate cause and damages for trial. After a trial on these issues, the jury returned a verdict in favor of the defendant. Johnson appeals, asserting that the verdict was not supported by the evidence and that the trial court erred in instructing the jury on speculative damages. For reasons which follow, we affirm.

1. "Where a jury returns a verdict and it has the approval of the trial judge, the same must be affirmed on appeal if there is any evidence to support it as the jurors are the sole and exclusive judges of the weight and credit given the evidence." *Taylor v. Ga. Power Co.*, 136 Ga. App. 412, 413 (1) (221 SE2d 222) (1975). Moreover, "the evidence is to be construed in the light most favorable to the prevailing party and every presumption and inference is in favor of sustaining the verdict." (Punctuation omitted.) *Kent v. Peters*, 211 Ga. App. 698

---

(1) (440 SE2d 87) (1994).

Viewed in this light, the evidence shows that Johnson and Cooper were involved in an automobile collision on August 19, 1995. Johnson initially felt "a little sore, [a] little achy, mostly in [her] back and [her] neck for the first few days," and five days later she went to a chiropractor for treatment for neck and back pain. She saw the chiropractor approximately ten times.

On September 14, 1995, Johnson went to Dr. Mark Harris, a neurologist, complaining of headaches, neck and back pain, and a tingling and numbness in her left arm. Dr. Harris made no objective findings as to the source of Johnson's complaints of headaches and numbness in her arm; however, he found limited lateral movement of her neck, some spasm of the muscles that run up the middle and lower back, and a slight decrease in her left knee deep tendon reflex. Based on these findings, Dr. Harris ordered an MRI. Dr. Harris subsequently diagnosed Johnson as having a bulging disk based on his review of the MRI film taken on September 16, 1995.

On September 29, 1995, Johnson went to an emergency room where she again complained of headaches and neck and back pain. That same day, Johnson returned to Dr. Harris with similar complaints of neck and back pain and numbness in her left arm. Dr. Harris recommended that she continue her anti-inflammatory medication and gave her a referral for physical therapy.

Johnson did not return to Dr. Harris until five months later, on February 27, 1996, at which time she complained of spasms in her left shoulder. On her final visit to Dr. Harris on March 14, 1996, Johnson complained of continuing low back, *right* arm, and *right* shoulder pain. Johnson received no further medical treatment. Testifying on Johnson's behalf, Dr. Harris stated that her injuries were *consistent* with the type of force involved in the collision, but conceded that the bulging disk he observed in the MRI film could have been a preexisting condition.

Johnson asserts that the evidence she presented at trial demanded a verdict in her favor because she presented positive and unimpeached testimony concerning her injuries. We disagree. The issue here is not whether Johnson was in fact injured, but whether she was injured by the collision. See *Davis v. McCray*, 127 Ga. App. 281, 282 (193 SE2d 200) (1972); *Kent*, supra; *Hansen v. White*, 190 Ga. App. 596 (379 SE2d 536) (1989). We have previously held that a jury may find in favor of a defendant even when the issue of liability is not before the jury and the plaintiff presents evidence of an injury. See *Davis*, supra at 282.

Johnson should not assume that the issue of proximate cause is to be decided in her favor simply because the tort elements of duty and breach were established by Cooper's pretrial stipulation. See

*Harrison v. Feather*, 211 Ga. App. 468 (439 SE2d 706) (1993). For instance, in *Kent*, supra, the jury returned a verdict in favor of the defendant; thus, they "necessarily concluded either that [the defendant] was not negligent or, if she was, that [the plaintiff] did not sustain an injury as a result of her negligence." Id. at 698. In *Kent*, "some time intervened before [the plaintiff] consulted a physician. Approximately one month passed before she went to the hospital emergency room, two to three months before she consulted an orthopedist, and almost three years before she consulted a neurological surgeon." Id. There was testimony from the plaintiff's treating physicians that "their diagnoses depended upon [her] subjective complaints of pain, that she 'had a normal examination,' with no objective signs of a neurological problem, and that there were other possible causes of her injuries." Id. Further, there was evidence the plaintiff "gave incomplete or inconsistent evidence regarding, for example, her statements at the scene of the accident and her description of her symptoms." Id.

Like the plaintiff in *Kent*, Johnson waited approximately one month before seeing Dr. Harris. Although Johnson testified that she saw a chiropractor before this visit, she did not provide any records of those visits, nor did she have the chiropractor testify at trial. According to Dr. Harris, many of Johnson's complaints of pain could not be confirmed by any objective tests, except for limited movement in her neck, a spasm in the muscles that run down the middle and lower back, and a slight decrease in her left knee deep tendon reflex. These objective symptoms led Dr. Harris to order an MRI, which revealed a bulging disk. Although Dr. Harris testified that the accident was consistent with the type of force that could cause Johnson's problems, he did not state to a reasonable degree of medical certainty that the accident in fact caused her injuries and admitted that her bulging disk could have predated the accident.

Following her initial visits to Dr. Harris in the month after the accident, Johnson did not return to the doctor until five months later. During her final visit to Dr. Harris, Johnson complained of right arm and shoulder pain, when previously she consistently complained of *left* arm and shoulder pain. Thereafter, Johnson sought no medical treatment whatsoever. Whether Johnson's complaint of right arm pain was an inconsistency warranting the jury to find her credibility impeached or simply a late manifestation of symptoms relating to the collision was for the jury to decide. See *Davis*, supra.

The evidence clearly established that Johnson had a bulging disk and various manifestations of pain. However, as in *Davis*, the jury could have concluded that the force of the collision was unlikely to have caused Johnson's disk injury. The jury, consistent with Dr. Harris' testimony, could have thus concluded that the injury was preexisting and that her pain manifestations were probably the result of

this preexisting condition. If so, the jury could have concluded that the plaintiff did not carry her burden of proving that the collision was the proximate cause of her injuries. See *Hambrick v. Makuch*, 228 Ga. App. 1, 2 (2) (491 SE2d 71) (1997). Moreover, the medical testimony from Johnson's own doctor and the intervening time between her medical treatments also support the jury's verdict in favor of Cooper. See *Kent*, supra; *Davis*, supra. Ultimately, the jury was in the best position to evaluate the credibility of Johnson and that of her witnesses. See *Hansen*, supra; *Taylor*, supra. Even though the plaintiff proved an injury, the jury was authorized to find that the injury was unrelated to the collision. See also *Purvis v. Toole*, 207 Ga. App. 189 (427 SE2d 565) (1993); *Hansen*, supra.

Contrary to Johnson's contention, *Cochran v. Lynch*, 126 Ga. App. 866 (192 SE2d 165) (1972) does not require a different result. In *Cochran*, we stated that "positive and direct testimony of an unimpeached witness cannot be arbitrarily rejected by a jury." Id. at 867. Only the plaintiff and her physician testified in *Cochran*, and there was no contradictory testimony or circumstances to refute the evidence. Consequently, "the evidence there demanded a finding that the plaintiff was injured to some extent; if she was injured the causal chain was unbroken." *Davis*, supra at 282. As Johnson concedes, however, *Cochran* has been heavily distinguished over time. See, e.g., *Hansen*, supra (plaintiff's credibility impeached); *Purvis*, supra (opposing medical testimony and lapse of time between treatments); *Davis*, supra (plaintiff waited five months before seeking medical treatment).

The jury in the instant case cannot be said to have rejected Johnson's testimony, which went to the existence of any injury, not to causation. Even if they believed she had been injured, they could have found that she did not carry her burden of proof regarding causation. Johnson's own doctor testified to a possible preexisting medical condition, and the jury could have concluded that the force of the collision was insufficient to cause her injuries. Regardless of whether we might find it unlikely that such injuries would coincidentally manifest themselves shortly after the accident, that is a matter for the jury to decide, and it is not within our province to second-guess their factual findings. See *Taylor*, supra; *Hansen*, supra.

2. Johnson also challenges the trial court's charge to the jury regarding speculative injuries and damages. According to Johnson, the charge was an incomplete statement of the law and confusing to the jury. We disagree.

The trial court gave the following charge to the jury: "If you believe from the evidence adduced that the cause of any injury or medical condition which may have been suffered by the plaintiff cannot be determined with certainty but that it is a matter of specula-

tion or conjecture, then in that event you would not be authorized to find a verdict against the defendant in any amount for such injury or medical condition. And in such instance it would be your duty to return a verdict in favor of the defendant as to such injury or medical condition, it being absolutely necessary for the plaintiff in order to recover damages from the defendant to show by a legal preponderance of the evidence that the particular loss complained of was proximately caused by the negligence of the defendant. In this connection I further instruct you that the law does not permit you to speculate or to guess about the existence of any injury claimed." Johnson contends this instruction is incomplete because it omitted the following language: "The plaintiff is not required to prove all of her contentions of negligence. But if you find that she has proved one of these acts of negligence and that such act amounted to a failure to exercise ordinary care and diligence, and was the proximate cause of the plaintiff's alleged injury and damages, then the plaintiff would be entitled to recover."

We note at the outset that Johnson did not propose this additional language when she objected to the charge. However, she argues that, without such language, the charge given was an incomplete statement of the law and not adjusted to the facts of the case. When determining whether a jury instruction is complete, we look to the charge as a whole to determine its propriety. *Royal v. Davis Hauling Co.*, 164 Ga. App. 409, 410 (297 SE2d 333) (1982). Here, the charge on speculative damages was based upon the charge given in *Royal*, supra. Johnson properly notes that the language she insists would complete the charge at issue was the same language in *Royal* that led us to find the charge as a whole complete. Id. at 410-411. However, the essence of the language Johnson proposes regarding her burden of proof and proximate causation is found elsewhere in the court's charge. Specifically, the trial judge charged the jury on Johnson's burden of proof and the necessity that Cooper's negligence be the proximate cause of Johnson's injuries. Although the language suggested by Johnson would have been "elaborative," we cannot say that the charge as given, considered as a whole, was incorrect or misleading. Id. at 411.

Johnson's complaint that the jury's questions during their deliberations showed that they were confused is without merit. During deliberations the jury posed the following questions to the court: (1) "Do we have to find if the car accident caused the initial injury to the disk lumbar 5?" and (2) "In order to find for the plaintiff do we have to decide if the car accident is the sole cause of the injuries such as the bulging disk?" The trial court answered these questions for the jurors, and Johnson did not object to the recharges. Contrary to Johnson's contentions, the jurors' questions illustrate their understanding

that there must be a causal connection between the injury alleged and the admitted breach of duty, rather than confusion over the trial court's charge regarding any speculative damages. See *Smoky, Inc. v. McCray*, 196 Ga. App. 650, 656 (5) (396 SE2d 794) (1990) (in reviewing whether jury instructions as a whole adequately set forth the law applicable to the facts of a given case, we must view the charges from the perspective of the average juror, since "it is the jury, not the trial court or the appellate courts, that applies the law").

Taken as a whole, and given the evidence as outlined in Division 1, the trial court's charge to the jury was an accurate statement of the law. See *Royal*, supra.

*Judgment affirmed. Pope, P. J., and Beasley, J., concur.*

DECIDED OCTOBER 16, 1998.

*Nix & Commander, Keenan R. S. Nix, Scott C. Commander, Christopher P. Carpenter*, for appellant.
*Clifton Lee & Associates, Shoran N. Reid*, for appellee.