A01A0235. WALLACE et al. v. STRINGER et al.
(553 SE2d 166)

BLACKBURN, Chief Judge.
After an employee of Wal-Mart Stores, Inc. accused Mary Ann Wallace of shoplifting a baby blanket, Mary Ann and Kelvin Wallace filed the underlying action, asserting several claims against Wal-

Mart and its employee, Charlene Stringer. The trial court granted summary judgment to Wal-Mart and Stringer on several of the Wallaces' claims including assault and false imprisonment. A jury returned a verdict of $50,000 on the Wallaces' remaining claims. The Wallaces appeal contending that the trial court erred by (1) granting summary judgment on their assault and false imprisonment claims and (2) denying their motion for judgment notwithstanding the verdict or, in the alternative, motion for new trial. For the reasons set forth below, we reverse.

1. The Wallaces' complaint alleged several causes of action against the defendants including: false imprisonment or false arrest, malicious prosecution, libel, intentional infliction of emotional distress, tortious misconduct, negligent hiring, conversion, assault, respondeat superior, and loss of consortium. The trial court granted the defendants' motion for summary judgment on the Wallaces' claims for false arrest, false imprisonment, libel, assault, and intentional infliction of emotional distress. Of these complaints, the Wallaces appeal the trial court's ruling only with regard to their claims for assault and false imprisonment. We therefore will limit our review to such complaints in this enumeration.

> To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c). A *defendant* may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case. . . . If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue. OCGA § 9-11-56 (e).

(Emphasis in original.) *Lau's Corp. v. Haskins.*[1] On appeal from a grant of summary judgment, this Court conducts a de novo review of the record. Id.

In the present case, viewed in the light most favorable to the Wallaces, the evidence revealed that as Wallace[2] and her baby were

---

[1] *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

[2] Because Kelvin Wallace's claim includes only a loss of consortium claim, references to "Wallace" refer to Mary Ann Wallace. All references to Kelvin Wallace will include his first name or his status as Mary Ann's husband.

leaving Wal-Mart with her purchases, Stringer stopped her and, indicating her baby's blanket, asked her, "Where did you get this?" Wallace told Stringer that it was her blanket. Stringer actually picked up the blanket and said, "No, it's not." Stringer told Wallace that she needed to come back into the store to clear up the blanket "deal." Wallace did not understand exactly why she was being asked to come back into the store, but she turned her stroller around and followed Stringer. Wallace deposed that Stringer was using a screaming voice and getting up in her face. Wallace continued to ask Stringer why they needed to go back into the store. And Stringer responded, "I watched you from the time you set foot in this store. I know you have something that's not yours." A male Wal-Mart employee joined Stringer, but he did not say anything and was a passive observer. As Wallace followed Stringer and the employee to the back of the store, Stringer continued to "yell" at Wallace regarding coming to the back of the store. Wallace continued to explain that she had not taken anything. Wallace deposed that, at that point, she had not been physically forced to follow Stringer to the back of the store. Stringer had picked up the blanket in question at the front of the store and continued to hold it until they got to the layaway department.

At the layaway department, Wallace became scared of continuing with Stringer. Wallace deposed that she was afraid and that she did not trust Stringer with her baby's life. At this point, Stringer told Wallace that she was going to come to the back of the store or that Stringer would get someone to physically take her back. Stringer gave Wallace the blanket and left to get management.

Stringer returned in about three minutes with a male member of management. The man was polite and professional and said that Wallace would need to come to the back office with him. Wallace complied with these instructions. At this point, the blanket was in Wallace's possession and she tried to reason with Stringer. Wallace tried to show Stringer that the blanket was used, it had baby spit-up on it, and it had long black hairs on it. Stringer would not listen; she continued to say that Wallace was lying. Stringer called other Wal-Mart employees into the room and asked if they had seen Wallace come into the store with the blanket.

Wallace decided to go look in her truck to make sure that she had brought the blanket with her and that she had not mistakenly picked up the blanket in the store. Stringer and the male employee went with her. After going to the truck, Stringer apologized for getting loud and told Wallace that she could leave. Wallace said she did not want to leave, that she wanted to call the police and her husband. Stringer changed her attitude after Wallace said she was not leaving. Stringer then told Wallace that she could not leave because she had taken the blanket.

The police arrived, and the officer refused to write a ticket. He looked at the blanket and expressed surprise that anyone would think it was a new blanket. The police officer told Wallace she was free to go. Notwithstanding the police officer's actions, Wal-Mart criminally prosecuted Wallace on a shoplifting charge which was dismissed by the recorder's court judge who heard the case. The recorder's court judge, however, bound Stringer over to superior court on a warrant on false imprisonment charges.

The trial court granted summary judgment to defendants on Wallace's assault claim, because she "failed to point to evidence that demonstrates that Mrs. Wallace was physically touched by Stringer or that Stringer or any other employee used force against her."

(a) OCGA § 51-1-14 provides that "[a]ny violent injury or illegal attempt to commit a physical injury upon a person is a tort for which damages may be recovered." Black's Law Dictionary (6th ed.) provides that "[a]n assault may be committed without actually touching, or striking, or doing bodily harm, to the person of another." Georgia case law also establishes that an actual touching is not a necessary element of the tort of assault. "To constitute an assault no actual injury need be shown, it being only necessary to show an intention to commit an injury, coupled with an apparent ability to do so." (Punctuation omitted.) *Reeves v. State;*[3] *Godboult v. State.*[4] Wallace contends that Stringer's actions constituted an assault. Given Stringer's conduct in shouting and threatening Wallace, including her threats to have her dragged to the office in the back of the store, coupled with her apparent ability to accomplish the threatened assault, we cannot say as a matter of law that Wallace was not the victim of an assault. This is a matter for a jury to determine. The trial court erred in granting summary judgment to defendants on Wallace's assault claim, and that ruling is reversed.

(b) The defendants contend that the trial court properly granted summary judgment to them on Wallace's claim of false imprisonment because (1) Wallace was never arrested and (2) Wallace was not restrained or prevented from leaving. However, issues of fact remain which preclude the trial court's finding that Wallace was not restrained or prevented from leaving.

> False imprisonment is defined by statute as the unlawful detention of the person of another, for any length of time, whereby such person is deprived of his personal liberty. OCGA § 51-7-20. Our courts have held that the only essential elements of the tort are the detention and its unlawful-

---

[3] *Reeves v. State*, 128 Ga. App. 750, 751-752 (197 SE2d 843) (1973).
[4] *Godboult v. State*, 38 Ga. App. 137, 138 (142 SE 704) (1928).

ness. The restraint used to create the detention must be against the plaintiff's will and be accomplished by either force or fear. The restraint may arise out of words, acts, gestures or the like, which induce a reasonable apprehension that force will be used if plaintiff does not submit; and it is sufficient if they operate upon the will of the person threatened, and result in a reasonable fear of personal difficulty or personal injuries. An individual may be imprisoned when [her] movements are restrained . . . or when [she] is compelled to go along with the defendant.

(Citations and punctuation omitted.) *Wideman v. DeKalb County.*[5] Although Wallace deposed that she was not physically forced to accompany Stringer to the back office, the evidence shows that Stringer was in possession of Wallace's blanket while they were walking to the back of the store and that she had threatened to have her dragged there if she resisted. Additionally, Wallace deposed that at some point while she was in the back of the store, she asked if she could go to the bathroom. Stringer replied, "No, you're not going anywhere."

In *Burrow v. K-Mart Corp.*,[6] this Court first discussed the issue of whether the detention of a person's property is the detention of the person. Therein, the plaintiff had purchased two lamps which were not in their original boxes. Id. at 284. The store greeter took the boxes to search them and demanded to review the receipt. Id. This Court determined that "[t]he exercise of dominion over the property serves also to exercise dominion over the person owning such property," and that a jury issue was created as to whether the greeter's words and acts "[acted] upon the plaintiff's will so as to restrain her." Id. at 289 (3).

In the present case, Stringer's dominion over Wallace's blanket and her alleged refusal to allow Wallace to go to the bathroom are sufficient to create a jury issue on Wallace's claims of false imprisonment.

(c) Defendants contend that Wallace's claims for false imprisonment and malicious prosecution are mutually exclusive. We cannot agree. The cases cited by defendants all involve the actual arrest of the plaintiff pursuant to a warrant or based upon probable cause. Such cases are distinguishable from the facts herein. Furthermore, in *Brown v. Super Discount Markets*,[7] we noted that false arrest and false imprisonment claims were not mutually exclusive. See also

---

[5] *Wideman v. DeKalb County*, 200 Ga. App. 624, 628 (1) (b) (409 SE2d 537) (1991).
[6] *Burrow v. K-Mart Corp.*, 166 Ga. App. 284, 287-289 (3) (304 SE2d 460) (1983).
[7] *Brown v. Super Discount Markets*, 223 Ga. App. 174, 175 (477 SE2d 839) (1996).

*Simmons v. Kroger Co.*[8]

Therefore, the trial court erred in granting the defendants' motion for summary judgment on Wallace's assault and false imprisonment claims, and that ruling is reversed.

2. In her second enumeration of error, Wallace contends that the trial court erred by denying her motion for judgment n.o.v. or, in the alternative, motion for new trial. Wallace argues that the jury's verdict was wholly inadequate with relation to the evidence presented.

> "The question of damages is ordinarily for the jury; and the court should not interfere with the jury's verdict unless the damages awarded are clearly so inadequate or so excessive as to be inconsistent with the preponderance of the evidence in the case. OCGA § 51-12-12. The general rule on appeal of an award of damages is that a jury's award cannot be successfully attacked so as to warrant a new trial unless it is so flagrantly excessive or inadequate, in light of the evidence, as to create a clear implication of bias, prejudice, or gross mistake on the part of the jurors. Even though the evidence is such as to authorize a greater or lesser award than that actually made, the appellate court will not disturb it unless it is so flagrant as to shock the conscience." (Citations and punctuation omitted.) *Sykes v. Sin*, 229 Ga. App. 155, 159 (4) (493 SE2d 571) (1997).

*J. B. Hunt Transport v. Brown.*[9]

After reviewing the record, we cannot say that the trial court erred in this ruling or that an award of $50,000 was inadequate for the issues tried. Wallace claimed medical expenses of $13,217.81 and attorney fees of $18,000. Therefore, the trial court did not err in denying Wallace's motion for judgment n.o.v. or, in the alternative, motion for new trial for those issues which were tried.

However, because the trial court had granted summary judgment to defendants on the assault and false imprisonment claims, those issues were not before the jury for consideration. The jury did, however, hear the underlying evidence on these issues during the trial of the remaining claims. As summary judgment had been granted to defendants on the assault and false imprisonment claims, these claims by plaintiffs were not considered by it and the trial court gave no charges on the relevant law. We cannot say that the jury's verdict was not affected by the evidence on these issues, and thus a new trial must be had on all issues in light of our ruling in Division 1.

---

[8] *Simmons v. Kroger Co.*, 218 Ga. App. 721, 722 (1) (463 SE2d 159) (1995).
[9] *J. B. Hunt Transport v. Brown*, 236 Ga. App. 634, 637 (3) (512 SE2d 34) (1999).

We therefore vacate the jury's verdict and remand this case for a new trial, as requested by Wallace.

*Judgment reversed in part, vacated in part and remanded for new trial. Pope, P. J., and Mikell, J., concur.*

DECIDED JULY 31, 2001 —

Savage, Turner, Pinson & Karsman, Brent J. Savage, C. Dorian Britt, for appellants.

McLain & Merritt, Albert J. Decusati, Lucian Gillis, Jr., Hall, Booth, Smith & Slover, Anthony A. Rowell, for appellees.