## A03A1316. EDWARDS et al. v. SABAT et al.

(589 SE2d 618)

RUFFIN, Presiding Judge.

Paige Edwards sued Natalie Sabat for injuries allegedly suffered by her infant daughter, Caylin, when Caylin was in Sabat's care. Sabat counterclaimed for, among other claims, intentional infliction of emotional distress and assault. A jury found for Sabat as to Edwards' claims and awarded Sabat $65,000 on her counterclaims of intentional infliction of emotional distress and assault. Edwards appeals, asserting that the trial court erred with respect to several evidentiary issues and in failing to grant a directed verdict as to Sabat's claims. For reasons that follow, we affirm.

Where a jury returns a verdict, the same must be affirmed on appeal if there is any evidence to support it.[1] Moreover, the evidence is to be construed in a light most favorable to the prevailing party and every presumption and inference is in favor of sustaining the verdict.[2]

Viewed in this manner, the evidence shows that Caylin Edwards was enrolled on January 6, 1999, in a day care center operated by Sabat out of her home. Sabat is a neighbor of Edwards, who is a police officer, and Lisa Fields, Edwards' life-partner. On January 29, 1999, Edwards left Caylin at the day care during the afternoon. Later in the day, Caylin was transported to the emergency room and was diagnosed with shaken baby syndrome.

About three weeks after the incident with Caylin, Edwards starting "flipping off" Sabat and mouthing "two particular words" every time she drove by Sabat's house. Edwards would also flip Sabat off in front of Sabat's three-year-old daughter, and Sabat would have to explain to her daughter that such behavior was wrong. Sabat testified that on one occasion Edwards, with the blue lights flashing, drove her police car slowly past Sabat's house. She further testified that one day Edwards tailgated her in Edwards' truck, then drove by and flipped her off. On another day, Edwards swerved in front of her with her truck and cut her off when Sabat's daughter was in the car. Finally, Sabat described an incident where Edwards ran her into a ditch, again while her daughter was in the car. Sabat testified that because of Edwards' behavior, she was "scared out of her mind."

1. Edwards claims that the trial court erred in failing to grant a directed verdict as to Sabat's claims for assault. We disagree.

OCGA § 51-1-14 provides that "[a]ny violent injury or illegal attempt to commit a physical injury upon a person is a tort for which damages may be recovered." Georgia case law establishes that an

---

[1] *Johnson v. Cooper*, 234 Ga. App. 753 (1) (507 SE2d 559) (1998).

[2] Id.

actual touching is not a necessary element of the tort of assault; it is only necessary to show an intention to commit an injury, coupled with an apparent ability to do so.[3] In this case, Sabat testified that while both parties were in their respective vehicles, Edwards tailgated her, cut her off, and ran her into a ditch. This evidence was sufficient for the jury to conclude that Sabat was entitled to an award of damages for assault.

2. Edwards also claims that the trial court erred in failing to grant a directed verdict as to Sabat's claim for intentional infliction of emotional distress. Again, we disagree.

To sustain a claim for intentional infliction of emotional distress, one must prove intentional or reckless conduct, which is extreme and outrageous, and which caused severe emotional distress.[4] Here, the record is replete with evidence to support Sabat's claim. Sabat testified that Edwards continually "flipped off" Sabat, that such behavior occurred in front of Sabat's young daughter, and that Edwards on different occasions tailgated her, cut her off, and ran her into a ditch. She also testified that she was "scared out of her mind" because of this conduct. This testimony authorized a jury to conclude that Sabat should be awarded damages for intentional infliction of emotional distress.

3. Edwards claims that the trial court erred in violating the pretrial order by allowing the testimony of two deputy sheriffs who were not listed in the pre-trial order. We disagree. The decision to allow the testimony of a witness not named in the pre-trial order is a matter within the discretion of the trial court.[5] These officers testified regarding Edwards' temper when she was told by the officers that she could not enter the courthouse with a small pocketknife. Because Edwards had previously introduced testimony regarding her temperament, Sabat was entitled to present testimony of the officers to contradict and impeach such evidence.[6] Accordingly, we find that the trial court did not abuse its discretion in allowing the testimony of these witnesses.[7]

4. Edwards also asserts that the trial court erred in allowing Sabat to introduce "new evidence" during the closing arguments of the trial. We disagree with Edwards that certain statements, which were set forth on a demonstrative aid, constituted "new evidence." Rather, the demonstrative aid merely recapped evidence which was supported by the testimony of witnesses. Because counsel is given

---

[3] See *Wallace v. Stringer*, 250 Ga. App. 850, 853 (1) (553 SE2d 166) (2001).

[4] See *Troncalli v. Jones*, 237 Ga. App. 10 (514 SE2d 478) (1999).

[5] See *Allstate Ins. Co. v. Reynolds*, 138 Ga. App. 582, 587-588 (227 SE2d 77) (1976).

[6] See *Metro Atlanta Trucking Co. v. Kyzer*, 217 Ga. App. 630, 631 (458 SE2d 416) (1995).

[7] See *Allstate*, supra.

wide latitude during argument, provided he does not go outside the facts presented in the case,[8] we find no error.

5. Finally, Edwards argues that the trial court violated its own order in allowing a polygraph examiner to testify. Again, we disagree. The order prohibited Sabat from "introducing, attempting to introduce, or making reference to in any way the fact that Lisa Fields or any party took a polygraph examination, or the result of said examination, or that they were even requested to take an examination." Nevertheless, during the trial, the court allowed Sabat to call Mary Lou Respis, the law enforcement officer who apparently had administered a polygraph examination to Edwards and Fields during a prior criminal investigation.

The very brief examination of Respis consisted of two substantive questions. Sabat's counsel asked Respis to describe a conversation between Respis and Fields on February 5, 1999. Respis said that she asked Fields whether Fields had ever intentionally hurt Caylin, to which Fields responded no. Fields further stated, however, that she had bounced Caylin up and down and on at least one occasion, that the baby had lurched backward. Respis also asked whether Fields had handled Caylin in this way within 24 hours of the incident at Sabat's home, and Fields responded that she did not remember. Sabat apparently offered this evidence to impeach Fields' prior testimony regarding her conversation with Respis. No mention was made of the criminal investigation, Respis' occupation, the polygraph, or any results of the polygraph. Accordingly, the court did not violate its own order or erroneously admit evidence of polygraph results.[9] Moreover, even if this testimony was improperly admitted, we fail to see how the outcome of the trial would have been any different had it not been admitted, and as such its admission was harmless error.[10]

*Judgment affirmed. Smith, C. J., and Miller, J., concur.*

DECIDED OCTOBER 31, 2003.

*Clifford H. Hardwick*, for appellants.

*Schulten, Ward & Turner, Kevin L. Ward, Nimesh B. Patel*, for appellees.

---

[8] See *Conner v. State*, 251 Ga. 113, 122-123 (303 SE2d 266) (1983).

[9] See *Collar v. State*, 206 Ga. App. 448, 449 (3) (426 SE2d 43) (1992).

[10] See *Hunnicutt v. Hunnicutt*, 237 Ga. 497 (228 SE2d 881) (1976).