[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-12580

Non-Argument Calendar

_____

SAMUEL GHEE, IV,

Plaintiff-Appellant,

*versus*

FLIX NORTH AMERICA, INC.,
GREYHOUND LINES INC.,
GEORGE MOORE,
ISSAC SANCHEZ,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 4:23-cv-00070-CDL

_____

Before JORDAN, BRANCH, and ANDERSON, Circuit Judges.

PER CURIAM:

Samuel Ghee, IV, proceeding *pro se*, appeals the district court's order granting the motion for summary judgment filed by Officers George Moore and Isaac Sanchez, as well as the district court's order granting the motions to dismiss filed by Greyhound Lines, Inc. and Flix North America, Inc. (Greyhound's parent company). Mr. Ghee also challenges the district court's order denying his motion for recusal. Following a review of the record and the parties' briefs, we affirm.[1]

## I

We summarize the facts, in the light most favorable to Mr. Ghee, as set out in the district court's summary judgment order. *See* D.E. 75 at 2–5.

---

[1] Mr. Ghee has moved for default judgment on appeal on the ground that he never agreed to any extension for the appellees to file their briefs. We deny that motion because we have discretion to grant an extension without requiring a response. *See* Fed. R. App. P. 27(b).

On December 6, 2022, Mr. Ghee traveled from Selma, Alabama, to Atlanta, Georgia, on a Greyhound bus.  The driver of the bus, Shonda Keenan, called 911 when the bus stopped in Columbus, Georgia, and stated that she had to "put a man off the bus" because he was disorderly and was "being rude, talking to [her] any kind of way."  Ms. Keenan said Mr. Ghee did not cease his conduct despite her warning that she would put him off the bus.  Greyhound's policy allows a driver who does not feel safe due to the behavior of a passenger to pull over in a safe location, call the police, and remove the person from the bus.

Mr. Ghee claimed that Ms. Keenan made an "unnecessary 911 call."  He said that her statements about him and his behavior were false and denied misbehaving.

Officers Moore and Sanchez from the Columbus Police Department arrived at the Greyhound Terminal in response to the 911 call.  The entire encounter between the Officers and Mr. Ghee was recorded by Officer Moore's body-worn camera.

The Officers spoke to both Ms. Keenan and Mr. Ghee—who continued to argue with each other—to get both sides of the story, but they did not speak to other passengers even though Mr. Ghee asked them to.  Mr. Ghee called Ms. Keenan an idiot, said she was mentally disturbed, and told her not to "backstab" him.  According to the Officers, this was consistent with Ms. Keenan's description of Mr. Ghee's behavior on the bus.  Despite the video, Mr. Ghee denies making the "backstab" comment.

Ms. Keenan told Mr. Ghee that she was "kicking [him] off this bus." At some point the Officers informed Mr. Ghee that Greyhound, a private company, could refuse him service and had decided it did not want him on the bus. The Officers ensured that Mr. Ghee was able to retrieve his luggage and tried to help him secure transportation from Columbus to Atlanta. They gave Mr. Ghee Greyhound's toll-free number so that he could find out the next bus to Atlanta and provided him with their names and badge numbers.

The Officers did not display their weapons or handcuffs, did not touch Mr. Ghee, and did not remove him physically from the bus. Nor did the Officers restrain Mr. Ghee, search him, arrest him, or ask for his identification.

## II

We first address the recusal issue, which Mr. Ghee mentions only in the "Statement of the Case" portion of his brief. We do so because we review *pro se* filings liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But we do not act as *de facto* counsel for a *pro se* litigant like Mr. Ghee. *See Day v. McDonough*, 547 U.S. 198, 201–02 (2006); *Bilal v. Geo Care, LLC*, 981 F.3d 903, 911 (11th Cir. 2020).

A judge is required to recuse under 28 U.S.C. § 455(a) when "an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality[.]" *United States v. Patti*, 337 F.3d 1317, 1321 (11th Cir. 2003) (internal quotation marks and citation omitted). We review a recusal ruling for

24-12580               Opinion of the Court                    5

abuse of discretion. *See McWhorter v. City of Birmingham*, 906 F.2d 674, 678 (11th Cir. 1990).

Mr. Ghee argues that the district judge demonstrated his bias and partiality based on his rulings in the case. *See* Appellant's Br. at 2–3, 17–19. Assuming that the recusal argument is sufficiently briefed, it lacks merit. As a general matter, recusal is not required when the challenged conduct consists of "judicial rulings, routine trial administration efforts, and ordinary admonishments[.]" *Liteky v. United States*, 510 U.S. 540, 556 (1994). And Mr. Ghee does not point to any "deep-seated and unequivocal antagonism" that might provide grounds for recusal. *See id.* The district judge therefore did not abuse his discretion in declining to recuse.

## III

We next turn to the district court's grant of summary judgment in favor of the Officers on Mr. Ghee's claims under 42 U.S.C. § 1983. Our review is *de novo*. *See Anthony v. Georgia*, 69 F.4th 796, 804 (11th Cir. 2023). Summary judgment should be granted only if there is no genuine dispute of material fact, viewing the evidence in the light most favorable to the non-movant. *See id.* There is a genuine issue of material fact if sufficient evidence is submitted for a jury to return a verdict for the non-movant. *See Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1284–85 (11th Cir. 1997). "[U]nsubstantiated assertions alone are not enough to withstand a motion for summary judgment." *Anthony*, 69 F.4th at 804 (quotation marks omitted). Yet a "litigant's self-serving statements based on personal knowledge or observation can defeat summary

judgment." *United States v. Stein*, 881 F.3d 853, 857 (11th Cir. 2018) (en banc).

## A

The Fourth Amendment prohibits unreasonable searches and seizures. *See* U.S. Const. amend. IV. A seizure under the Fourth Amendment occurs "when the officer, by means of physical force or show of authority, terminates or restrains [a person's] freedom of movement, through means intentionally applied." *Brendlin v. California*, 551 U.S. 249, 254 (2007) (quotation marks, citations, and emphasis omitted). In determining which level of Fourth Amendment scrutiny to apply, the Supreme Court has generally identified three types of police-citizen encounters:

> (1) brief, consensual and non-coercive interactions that do not require Fourth Amendment scrutiny; (2) legitimate and restrained investigative stops short of arrests to which limited Fourth Amendment scrutiny is applied; and (3) technical arrests, full-blown searches or custodial detentions that lead to a stricter form of Fourth Amendment scrutiny.

*United States v. Perkins*, 348 F.3d 965, 969 (11th Cir. 2003) (citations omitted).

"[A] person has been 'seized' . . . only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). "The fact that a person is not free to leave on his own terms at a given moment, however, does

24-12580                Opinion of the Court                7

not, by itself, mean that the person has been 'seized' within the meaning of the Fourth Amendment." *Chandler v. Sec'y of the Fla. Dep't of Transp.*, 695 F.3d 1194, 1199 (11th Cir. 2012). A police officer approaching an individual and asking a few questions does not constitute a seizure so long as a reasonable person would feel free to disregard the police. *See Florida v. Bostick*, 501 U.S. 429, 434 (1991). "A person who is told to leave one place but remains free to go anywhere else that he wishes can undoubtedly terminate his encounter." *Peery v. City of Miami*, 977 F.3d 1061, 1071 (11th Cir. 2020) (quotation marks omitted). When analyzing whether a seizure has occurred, we consider relevant factors such as

> whether a citizen's path is blocked or impeded; whether identification is retained; the suspect's age, education and intelligence; the length of the suspect's detention and questioning; the number of police officers present; the display of weapons; any physical touching of the suspect, and the language and tone of voice of the police.

*United States v. Perez*, 443 F.3d 772, 778 (11th Cir. 2006) (quotation marks omitted).

In his brief, Mr. Ghee complains that Ms. Keenan lied and that the Officers did not conduct a sufficient investigation. As a result, he says, the Officers did not get to the bottom of the dispute between himself and Ms. Keenan. *See* Appellant's Br. at 16–17. He also asserts that the Officers lacked probable cause. *See id*. at 18–19.

As the district court correctly explained, the Officers never seized or arrested Mr. Ghee.  And because they did not seize him or arrest him, they did not need probable cause.  Contrary to Mr. Ghee's assertion, *see id.* at 26, the encounter with the Officers was a "brief, consensual and non-coercive interaction[ ] that do[es] not require Fourth Amendment scrutiny."  *Perkins*, 348 F.3d at 969.

**B**

To successfully assert a conspiracy claim under § 1983, a plaintiff must show a conspiracy existed and that the conspiracy resulted in the actual denial of an underlying constitutional right.  *See Grider v. City of Auburn*, 618 F.3d 1240, 1260 (11th Cir. 2010).  "The plaintiff attempting to prove such a conspiracy must show that the parties 'reached an understanding' to deny the plaintiff his or her rights. The conspiratorial acts must impinge upon the federal right; the plaintiff must prove an actionable wrong to support the conspiracy."  *Id.* (quotation marks and citations omitted).  "[A]n agreement may be inferred from the relationship of the parties, their overt acts and concert of action, and the totality of their conduct[.]"  *Am. Fed'n of Lab. & Cong. of Indus. Orgs. v. City of Miami, Fla.*, 637 F.3d 1178, 1192 (11th Cir. 2011) (quotation marks omitted).

The district court correctly granted summary judgment in favor of the Officers on the § 1983 conspiracy claim.  Even assuming that there was sufficient evidence that a conspiracy existed, as Mr. Ghee claims, *see* Appellant's Br. at 27–29, Mr. Ghee was neither seized nor arrested by the Officers.  Because Mr. Ghee was not deprived of a Fourth Amendment right, the conspiracy claim fails.

## IV

We lastly address the district court's Rule 12(b)(6) dismissal of the claims against Greyhound and Flix.  Our review is *de novo*, and the question for us is whether the allegations in the complaint made the claims plausible.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

In his amended complaint, Mr. Ghee appeared to assert negligence, breach of contract, breach of the duty of a common carrier, intentional infliction of emotional distress, and assault claims against Greyhound and Flix.  The district court dismissed these claims on the defendants' motion.  First, the district court ruled that Mr. Ghee had not pled any facts to pierce the corporate veil against Flix for the actions of Greyhound or Greyhound's employees.  *See* D.E. 46 at 7–8.  Second, the district court concluded that, as to Greyhound, (a) Mr. Ghee had not pointed to any contract terms that had been breached; (b) even if Greyhound had breached its duty as a common carrier to discharge Mr. Ghee in a reasonably safe place, Mr. Ghee only alleged economic injury; (c) Mr. Ghee had not alleged that Ms. Keenan (the bus driver) threatened him or attempted to injure him so as to plausibly allege assault; and (d) there were no facts plausibly alleging that the emotional distress was severe.  *See id.* at 10–15.

On appeal, Mr. Ghee appears to challenge only the dismissal of his tort claim against Greyhound for breaching its duty as a common carrier.  His only arguments are that under Georgia law a common carrier is bound to exercise extraordinary diligence to

prevent insult, injury, or harm to a passenger it is transporting, and that a common carrier is liable for an assault committed by its employee. *See* Appellant's Br. at 31–33. We discuss each argument below.

## A

Mr. Ghee cites to O.C.G.A. § 46-9-132, which provides that "[a] carrier of passengers must exercise extraordinary diligence to protect the lives and persons of his passengers but is not liable for injuries to them after having used such diligence." This statute, however, does not prevent a common carrier like Greyhound from removing a disorderly passenger from a bus.

Generally speaking, a "common carrier of passengers has the right and often the duty to enforce order and decency upon its conveyances or premises by ejecting those who are disorderly, obscene, or dangerous in their conduct." Am. Jur. 2d Carriers § 1033 (May 2025 update). Under Georgia law, a common carrier may remove or discharge an unruly passenger, but "where the carrier, through its employe[e]s, acting within the scope of their authority, wrongfully ejects a passenger, the carrier is liable for the tort thus committed, irrespective of the good faith of its employe[e]s and the exercise on their part of ordinary prudence in determining whether or not the passenger has been guilty of misconduct. A mistake of fact on their part will not relieve the carrier from liability, even though they may have acted in entire good faith." *Seaboard Air-Line Ry. v. O'Quin*, 52 S.E. 427, 429 (Ga. 1905) (citations omitted). "In expelling a passenger from its train, the carrier acts at its peril;

24-12580                Opinion of the Court                11

and, if he be wrongfully ejected, the fact that its servants acted under a misapprehension in supposing that he had been guilty of misconduct can afford no excuse to the carrier for his unlawful expulsion." *Id*. *See also Daigrepont v. Teche Greyhound Lines*, 7 S.E.2d 174, 176 (Ga. 1946) ("Should a carrier, in violation of the duty so imposed upon it, illegally expel a passenger from its bus and wrongfully refuse to carry him to his destination, it would be liable to the passenger for damages proximately resulting therefrom.").

Under Georgia law, then, a passenger seems to have a cause of action against a common carrier which wrongfully removes him and does not allow him to complete the journey for which he paid. The problem for Mr. Ghee, as the district court explained, is that in his tort claim for breach of the duty of a common carrier, he alleged only an economic injury caused by Greyhound (through Ms. Keenan) taking him off the bus and not letting him finish his trip to Atlanta. In Georgia, the "'economic loss rule' generally provides that a contracting party who suffers purely economic losses must seek his remedy in contract and not in tort. Under the economic loss rule, a plaintiff can recover in tort only those economic losses resulting from injury to his person or damage to his property[.]" *Gen. Elec. Co. v. Lowe's Home Ctrs., Inc.*, 608 S.E.2d 636, 637–38 (Ga. 2005) (citations omitted). Mr. Ghee did not allege any injuries to his person or to his property from the allegedly wrongful removal from the bus. As a result, the district court correctly dismissed his tort claim against Greyhound for Ms. Keenan's actions.

**B**

In Georgia, the tort of assault requires the intent to commit a physical injury upon a person coupled with the apparent ability to do so.  *See* O.C.G.A. § 51-1-14; *Wallace v. Stringer*, 553 S.E.2d 166, 169 (Ga. App. 2001).  Here the amended complaint contained no factual allegations which plausibly alleged that Ms. Keenan threatened Mr. Ghee with physical injury.  The district court therefore correctly dismissed the assault claim.

**V**

We affirm the district court's orders and judgment.

**AFFIRMED.**